IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**In Re Motion for Protective Order**  )  Case No. 1:16-mc-00042

## Motion for Protective Order

Bren Simon commenced litigation in federal court in Denver, Colorado (*Bren Simon v. United States* (D. Colo. No. 1:15-cv-538)) to recover gift taxes and interest that she contends were erroneously assessed after her late husband, Melvin Simon ("Mel"), and his brother, Herbert Simon ("Herb"), reorganized the ownership structure of the Indiana Pacers (the "Team"). In connection with that litigation, Mrs. Simon and the government (collectively, the "Parties") have served multiple subpoenas on Herb, Stephen Simon, Kevin Bower, Donald Walsh, Pacers Basketball, LLC, and Faegre Baker Daniels, LLP (which represents these individuals and entities)(collectively, the "Pacers Group"). The Pacers Group agreed to produce documents and be deposed, provided (a) the Parties would agree upon, and the Colorado court would enter, a suitable pre-trial order protecting confidential information, and (b) the Parties would reimburse the fees and expenses that the Pacers Group incurred.

The Pacers Group has been negotiating with the government on the terms of a protective order and the scope of the requested information. Those negotiations have stalled. The Pacers Group now brings this motion for an order under FRCP 26(b)(1), 26(c)(1)(B), 45(d)(1), and 45(d)(2)(B)(ii) protecting it from having to comply with the subpoenas until (i) a suitable protective order is entered in the Colorado Litigation;

(ii) the scope of the information requested is confined so as to avoid additional undue burden; and (iii) the Parties agree to reimburse the Pacers Group for its fees and expenses incurred in complying with the subpoenas.

## I. Background.

Through MH Holdings, Inc., Herb and Mel co-owned Pacers Basketball Corporation, which owned and operated the Team. On February 2, 2009, Herb and Mel restructured the Team's ownership (the "Reorganization"), converting Pacers Basketball Corporation to Pacers Basketball, LLC. *See generally* Complaint, Dkt. No. 1, *Bren Simon v. United States* (D. Colo. No. 1:15-cv-538).

### a. Mel's widow sues the IRS for recovery of gift tax and interest.

According to Mrs. Simon's Colorado complaint, after Mel passed away in November 2009:

- Mel's estate filed a gift tax return in which Mrs. Simon consented to have gifts made by Mel in 2009 be considered as made one-half by each spouse;

- The gift tax return was audited. In 2013, the IRS asserted that the Reorganization actually included a gift from Mel to Herb, and that Mrs. Simon was responsible for half of the tax on that gift; and

- On that basis, Mrs. Simon paid $21,372,328.43 in gift tax and interest, under protest, to the IRS, which she now seeks to recover (the "Colorado Litigation").

*Id.* ¶¶ 28-30. No member of the Pacers Group is a party to the Colorado Litigation.

### b. The Parties serve wide-ranging, duplicative subpoenas.

In September 2015, Mrs. Simon served subpoenas ("Mrs. Simon's Subpoenas") on Herb, the Team, and Faegre Baker Daniels LLP ("FBD"). The recipients responded

2

timely, asserting objections on various grounds, including that the subpoenas sought irrelevant documents and documents that are protected by the attorney-client and accountant-client privileges. Ex. A (Herb's Responses and Objections to Mrs. Simon's Subpoena); Ex. B (Team's Responses and Objections to Mrs. Simon's Subpoena); Ex. C (FBD's Responses and Objections to Mrs. Simon's Subpoena). Herb and the Team also agreed to produce certain documents, provided that the Colorado court would enter a suitable protective order and that Mrs. Simon would reimburse their fees and expenses.

On December 23, 2015, the IRS, acting through the DOJ's Tax Division, served subpoenas (the "First IRS Subpoenas") on Herb, his son Stephen Simon, the Team, and Bankers Life Fieldhouse.[1] The First IRS Subpoenas were dramatically broader than Mrs. Simon's Subpoenas, seeking, for example:

- granular financial information from 2003-2011;

- "[a]ll documents constituting, reflecting or referring to communications (oral, electronic, or written)" from 2003-2009 about 12 different subjects (with another request seeking "[a]ll" communications from 2000-2009 about three broad topics encompassing those 12); and

- "[a]ll documents concerning" the Team's capital structure.

The Pacers Group responded timely, asserting objections similar to those asserted in response to Mrs. Simon's Subpoenas and agreeing—subject to entry of a protective order and reimbursement of fees and expenses—to produce a similar set of information. Ex. D (H. Simon, S. Simon, and Pacers Responses and Objections to First IRS Subpoena).

---

[1] Bankers Life Fieldhouse is the arena where the Team plays. The Pacers Group informed the IRS that Bankers Life Fieldhouse was not a legal entity as of February 2, 2009.

The IRS's responses to the Pacers Group's objections consisted generally of conclusory statements that the Pacers Group was "required by law to produce" documents, that the IRS "disagree[d] with" the Pacers Group's objections, that those objections were "without merit," and that the IRS's "valuation experts have requested this information because it is relevant to their analyses." Eventually, the IRS explained why it believed that certain financial documents were relevant and offered concessions regarding the scope of its requests.

### *The IRS serves a second set of subpoenas*

Instead of continuing to refine the existing subpoenas, however, the IRS served new, different subpoenas on Herb, Stephen Simon, and the Team on April 29, 2016 (the "Second IRS Subpoenas"). Ex. E (H. Simon and Pacers Responses and Objections to Second IRS Subpoenas).[2] The differences between the First and Second IRS Subpoenas required the Pacers Group to incur unnecessary attorneys' fees to ensure accuracy and consistency in its responses to the two sets of subpoenas.

At this point, though disagreements remain, the Pacers Group and the IRS have progressed toward an agreement on the scope of production. The Pacers Group's more important concern, however, is protecting the confidentiality of its information.

---

[2] Though the Pacers Group had informed the IRS that Stephen Simon does not have different or greater access to documents than Herb has, the IRS served a second subpoena on Stephen Simon. The Pacers Group asked the IRS to withdraw this subpoena, and informed the IRS that it would move to quash the subpoena instead of incurring additional attorneys' fees in responding to it. The IRS did not respond substantively until it was informed—repeatedly—that the motion to quash had been written and was being prepared for filing. This conduct failed to comply with FRCP 45(d)(1)'s directive to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

*The IRS refuses to agree to a reasonable protective order*

After responding to the First IRS Subpoenas, the Pacers Group negotiated with the IRS regarding an order to protect the confidential information the Pacers Group would produce (and that had already been produced) in the Colorado Litigation. At first, the IRS simply refused to enter into a protective order, saying that to do so would be contrary to DOJ policy. Eventually, the IRS agreed to the concept of a protective order—but only on the DOJ's terms. As explained below, the IRS refused to (i) consent to a requirement that it notify the Pacers Group and seek the Colorado court's leave before disclosing confidential information to other government entities; and (ii) allow the Pacers Group to designate as confidential information produced by other parties but belonging to the Pacers Group.

**II. The Pacers Group should not be required to comply with the subpoenas unless a suitable protective order is entered, the scope of the required production is limited, and the Parties reimburse their fees and expenses.**

Before the Pacers Group is required to comply with the subpoenas, the Parties should be required to: (a) agree to the Colorado court's entry of a pre-trial order protecting the confidentiality of the Pacers Group's information; (b) limit the scope of their subpoenas to the production of reasonably accessible, relevant, non-privileged information; and (c) reimburse the Pacers Group's fees and expenses incurred in responding to the subpoenas.

### a. The Pacers Group requires a protective order preventing the distribution of confidential materials, including those produced by other parties and entities.

The IRS (i) wants to be free to forward documents the Pacers Group designates as "Confidential" to other government agencies that are not subject to a protective order, and (ii) will not agree to an order allowing the Pacers Group to review and designate as "Confidential" materials belonging to the Pacers Group but produced by other individuals or entities. The Pacers Group cannot agree to the first condition, and must be able to protect its information regardless of who produced it.

#### i. The IRS should not be allowed to share confidential materials with entities that are not subject to a protective order.

The Pacers Group has requested that any protective order prohibit the IRS from sharing confidential information with others who are not bound by the order, without first notifying the Pacers Group and seeking leave of court. The IRS refuses. It says it is required to share information if it thinks that there is evidence of a crime. The Pacers Group hasn't committed any crimes. Still, it cannot agree to a protective order that allows the IRS—in its sole and unreviewable discretion—to share the Pacers Group's confidential information with a party that is not subject to the protective order. As the court in *United States v. Education Mgmt. LLC* held, granting "other agencies unfettered access" to confidential information "would essentially eviscerate the effectiveness of the protective order and would do nothing to advance the present litigation." 2013 WL 1568060, at *9 (W.D. Pa. Mar. 14, 2013)(internal punctuation omitted), *report and recommendation adopted*, 2013 WL 1601346 (W.D. Pa. Apr. 12, 2013).

In *Education Management*, the United States demanded "extraordinarily broad language" like (but not as broad as) the language that the IRS demands here:

> Nothing contained in this Order shall prevent, limit, or impair the right of the United States to disclose to any agency of the United States, Confidential Materials relating to any potential violation of statute or regulation that falls within the agency's jurisdiction.

2013 WL 1568060, at *9.[3] The Special Master rejected this language, concluding that it would deprive the producing party of the opportunities "to object to the disclosure; to seek judicial review of that disclosure; or to obtain a determination of whether the material relates to such a 'potential violation of statute or regulation,' or whether the alleged violation 'falls within the agency's jurisdiction.'" *Id.* "Under [the United States'] proposal these decisions would be made entirely by" the United States. *Id.* The court adopted the Special Master's report rejecting the United States' "extraordinarily broad language." 2013 WL 1601346 (W.D. Pa. Apr. 12, 2013). Similarly, the language that the IRS demands here would deprive the non-party Pacers Group of these opportunities. There is no justification for this.

Other courts have required the government to seek leave before disclosing information subject to a protective order. *See, e.g.*, *Mass. v. Mylan Labs., Inc.*, 246 F.R.D.

---

[3] The language the IRS insists be included in the protective order here is even broader than the language that the Special Master in *Education Management* rejected as "extraordinarily broad":

> Notwithstanding any provision of this Protective Order, *where counsel believe* confidential information or documents, either on its face or in conjunction with other information, indicates a violation or potential violation of law—criminal, civil, or regulatory in nature—*the relevant information or documents may be disclosed to the appropriate federal, state, local, foreign, or tribal, law enforcement authority or other appropriate agency charged with the responsibility of investigating or prosecuting such a violation or enforcing or implementing such law.*

Ex. F at 10 (emphasis added).

87, 95 (D. Mass. 2007)(rejecting provision in proposed order permitting disclosure to other state and federal agencies without judicial review); *United States v. Univ. Hosp. Inc.*, 2006 WL 2612631, at *3-4 (S.D. Ohio July 28, 2006)(rejecting provision in proposed protective order permitting disclosure to other agencies where government had made "no showing" that any violation of law or regulation had occurred); *Alaska Pulp Corp., Inc. v. United States*, 44 Fed. Cl. 669 (1999)(same); *cf. SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1273-74 (10th Cir. 2010)(DOJ violated protective order by disclosing information to IRS).

Notice and court-approval requirements are appropriate here, especially considering that, unlike the producing party in *Education Management*, the Pacers Group is a non-party. The Pacers Group respectfully requests an order from this Court protecting it from having to produce documents in response to the Parties' subpoenas unless a protective order is entered in the Colorado litigation that prevents the Parties, without first notifying the Pacers Group and obtaining the Colorado court's leave, from disclosing confidential information to anyone who is not subject to the protective order.

   **ii.  The Pacers Group must be able to designate as "Confidential" materials that belong to the Group but were produced by others**.

The IRS received productions of the Pacers Group's confidential information from multiple sources, including Mrs. Simon; Mel's estate; a CPA firm hired by Mel's estate; and Katz, Sapper & Miller (the CPA firm that represented Herb, Mel, and the Team). Some of this information was subject to protective orders, but much of it was produced without conditions. The fact that entities that had the Pacers Group's

confidential information produced it to the IRS without a protective order demonstrates why the Pacers Group must protect its information.

Courts have entered protective orders allowing entities to review and designate as confidential materials produced by others. *See, e.g.*, *Woodmen of World Life Ins. Soc'y v. U.S. Bank Nat. Ass'n*, 2011 WL 1584027, at *6 (D. Neb. Apr. 26, 2011)(protective order allowed "any party" to designate subpoenaed documents as "Confidential"); *cf. Kilopass Tech. Inc. v. Sidense Corp.*, 2011 WL 2470493, at *4 (N.D. Cal. June 21, 2011)(ordering parties "to work together in good faith to determine what documents produced by nonparty companies should be designated for protection"); *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 3958232, at *1 (N.D. Cal. July 29, 2013)(granting non-party leave to intervene to partially seal confidential license agreements produced by parties to the litigation).

This sort of protective order is appropriate here. The NBA requires the Indiana Pacers and its representatives to keep confidential information confidential. To the extent that other entities produced the Pacers Group's information without restrictions, the Pacers Group must be allowed to review those productions and designate information "Confidential" as necessary. Any protective order that does not afford the Pacers Group this ability is insufficient.

Accordingly, the Pacers Group respectfully requests an order from this Court protecting it from having to produce documents in response to the Parties' subpoenas unless the Colorado court enters an order allowing the Pacers Group to protect its information by designating it as "Confidential"—regardless of the information's source.

A "redline" document showing the differences between the protective order that the Pacers Group requires and one that the IRS says it will agree to is attached as Exhibit F.

      **b.**      **The Pacers Group should be obliged to produce only reasonably accessible, relevant, non-privileged information.**

Rule 26(b)(1) limits the scope of discovery to "nonprivileged matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case, considering," among other factors, "whether the burden or expense of the proposed discovery outweighs its likely benefit." The Colorado Litigation involves three questions: (1) what the Team's value was as of February 2, 2009 — the date of the Reorganization; (2) how the Reorganization changed Herb's and Mel's respective voting rights; and (3) whether the Reorganization was an arm's-length transaction. Each question can be answered by reference either to high-level financial information or corporate-governance documents.[4]

      **i.**      **The Pacers Group should be required to produce only reasonably accessible financial and corporate-governance information.**

The Pacers Group has already gathered the documents identified below, is reviewing them, and and is prepared to produce them once a suitable protective order is entered and the Parties agree to reimburse the Pacers Group's fees and expenses incurred in the review and production of the documents.

---

[4] The Pacers Group intends to assert the accountant-client privilege with respect to some of the financial documents it has collected. It has not yet generated a document-by-document privilege log because if the Court does not enter an order protecting it from having to produce accountant-client-privileged materials, the preparation of a privilege log will have been an unnecessary expense. The Pacers Group is prepared to generate a log promptly upon the Court's entry of the requested order.

*Materials gathered for review and production*

- The Team's consolidated balance sheet as of January 31, 2009.

- The Team's consolidated financial statements, cash management reports, and Independent Auditors' Reports for fiscal years 2004-2011.

- The Team's monthly summary financial statements for each month from January 31, 2004 through December 31, 2011 (not including inter-office memoranda or commentary documents).

- The Team's U.S. tax returns for the year ended June 30, 2005, for the six-month period ended December 31, 2005, and for the years ended December 31, 2006, 2007, 2008, and 2009.

- The Team's loan agreements, line of credit agreements, and/or notes payable in effect at any time from January 1, 2004 through December 31, 2011.

- Document(s) that reflect or summarize the Team's historic net income/losses from 1983 to 2011.

- Game reports from September 30, 2004 through September 30, 2011.

- Studies regarding sponsorship revenue and/or renewals from September 30, 2007 through September 30, 2011.

- Surveys regarding public perception of the Team from January 1, 2004 through December 31, 2011.

- Agreements with and documents provided to the Marion County Capital Improvement Board of Managers.

- Television and radio contracts in effect on February 2, 2009.

- The Collective Bargaining Agreement between the NBA and the NBA Players Association in effect on February 2, 2009.

In addition, the Pacers Group will search for, review, and produce reasonably accessible, nonprivileged documents in the following categories:

- Documents reflecting an established or estimated valuation of the Team.

- Reports prepared by McKinsey & Company related to the Team's finances.

- Corporate governance records of Pacers Basketball Corporation and Pacers Basketball, LLC in effect on February 2, 2009.

- The Shareholders Agreement for MH Holdings, Inc. dated October 31, 2003.

- The First Amended and Restated Shareholders Agreement for MH Holdings, Inc. dated December 19, 2008.

- The Agreement and Undertaking [a contract required by the NBA and related to the Reorganization] dated February 2, 2009.

- The Operating Agreement of Pacers Basketball, LLC dated February 2, 2009.

- Document(s) containing the details of any utilization by the Team of debt or financing obtained by the NBA.

Requiring the Pacers Group to search for, review, and produce information beyond that identified above would not yield nonprivileged information that is "relevant to any party's claim or defense and proportional to the needs of the case." FRCP 26(b)(1). Moreover, the additional "burden or expense" this would impose on the Pacers Group would "outweigh[] its likely benefit." *Id.* This Court is empowered to—and must—prevent this. FRCP 45(d)(3)(A)(iv)(courts "must quash or modify a subpoena" that "subjects a person to undue burden"); *see also WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 895-96 (S.D. Ind. 2006)(quashing non-party subpoena that requested "an unlimited range of information" and where party did not show it had "been unable to obtain th[e] information from those parties to the underlying litigation.").

The Pacers Group recognizes that the Colorado Litigation concerns a significant amount of money. But neither the Pacers Group nor any of its members is a party to the Colorado Litigation. They should not be put to significant trouble and expense in someone else's fight. *See id. at* 95-6 ("non-party status is a significant factor a court must consider when assessing undue burden for the purpose of a Rule 45 motion"). They have already undertaken more than enough burden in this case. And this Court may "limit discovery that is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Id.* (quoting FRCP 26(b)(2)). Accordingly, the Pacers Group respectfully requests an order limiting its required production to the materials identified above.

      **ii.**      **The Pacers Group should not be required to disclose information that is protected by the accountant-client privilege.**

Indiana law recognizes an accountant-client privilege. *Orban v. Krull*, 805 N.E.2d 450, 453 (Ind. Ct. App. 2004)(citing Ind. Code § 25-2.1-14-2). The privilege protects "confidential communications between accountants and their clients," as well as materials accountants maintain in their files as a result of their accounting or auditing work for the client. *See Ernst & Ernst v. Underwriters Nat. Assurance Co.*, 381 N.E.2d 897, 898-901 (Ind. Ct. App. 1978). Under the privilege, no "certified public accountant, a public accountant, an accounting practitioner, or … employee is … required to divulge information relative to and in connection with any professional service as a certified public accountant, a public accountant, or an accounting practitioner." Ind. Code § 25-

2.1-14-1. Further, "[t]he information derived from or as a result of professional services is confidential and privileged." *Id.* § 25-2.1-14-2.

Much of the information the Parties seek is financial information purportedly related to the Team's value as of February 2, 2009. And much of that information is protected by the accountant-client privilege. The Pacers Group recognizes that the accountant-client privilege does not apply in federal cases. But this situation is different, because failure to honor the privilege here may prejudice the Pacers Group in Indiana state-court litigation against one of the Colorado litigants.

*Mrs. Simon and Herb are adverse parties in litigation in Indiana*

On August 5, 2015, Herb and his trust sought a declaratory judgment with respect to a contract they had entered into with Mrs. Simon and others.[5] Herb filed his complaint for declaratory judgment in the Indiana state court where the litigation regarding Mel's estate is pending. Mrs. Simon purported to remove the declaratory judgment action to this Court. *See* Notice of Removal, Dkt. No. 1, *Herbert Simon and Herbert Simon Revocable Trust v. Bren Simon*, No. 1:15-cv-1413-RLY-DML. On October 2, 2015, Herb moved to remand the case. *See* Motion to Remand, Dkt. No. 14. The motion is fully briefed. Herb is confident that the matter will be remanded to the state probate court—where the accountant-client privilege applies.

---

[5] The terms of the contract are confidential.

*Disclosure of privileged information exposes the Pacers Group*
*to potential waiver of privilege in Indiana state litigation*

The Parties' subpoenas seek information that is protected under Indiana law by the accountant-client privilege. If the Pacers Group discloses this information,[6] Mrs. Simon will have available to her an argument that Herb or the Team has committed a waiver that prevents Herb from asserting the privilege against her in the Indiana litigation—or against anyone else.

Rule 45(d)(1) requires parties and attorneys serving subpoenas to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(2)(B)(ii) requires courts to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" with a subpoena. Surely the potential waiver of a privilege applicable in state-court litigation *against one of the parties that subpoenaed the information* is an undue burden. The Pacers Group should be allowed to withhold information that is protected by the accountant-client privilege. They respectfully request an order allowing them to do that.

    **iii.**    **Faegre Baker Daniels should not be required to comply with Mrs. Simon's subpoena.**

Mrs. Simon subpoenaed documents from Faegre Baker Daniels. FBD served timely objections to this subpoena, primarily on the grounds that it sought privileged and/or work-product-protected materials. Mrs. Simon has not pressed this issue. The Pacers Group respectfully requests an order protecting FBD from having to respond

---

[6] The Second IRS Subpoenas included deposition subpoenas of Kevin Bower, the Team's CFO; Donald Walsh, its President of Basketball Operations at the relevant time; and Herb. Each individual intends to object, as appropriate, to questions that call for the disclosure of either accountant-client or attorney-client privileged information.

further to the subpoena, including any requirement that it review its files and produce a privilege log, because producing such a log would serve no legitimate purpose and would merely generate additional undue burden and expense.

### c. The Parties must pay the fees and expenses that the Pacers Group is incurring.

The Federal Rules of Civil Procedure, especially as recently amended, recognize the significant burdens that discovery can impose on litigants (or, as here, non-parties). For example:

- Rule 26(b)(1) requires courts to consider "whether the burden or expense of the proposed discovery outweighs its likely benefit."

- Rule 45(d)(1) states that a "party or attorney responsible for issuing and serving a subpoena *must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena*. The court for the district where compliance is required *must enforce this duty* and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." (emphasis added).

- Rule 45(d)(2)(B)(ii) provides that an order directing a non-party's compliance with a subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."

The Pacers Group has incurred more than $100,000 in attorneys' fees in responding to and negotiating regarding the multiple subpoenas it has received from the Parties. These expenditures were required, in large part, because the Parties served duplicative and overly broad subpoenas and refused to agree to the entry of a reasonable protective order. Particularly, the IRS's service of two sets of complex and overlapping subpoenas imposed significant and unnecessary financial burdens on the Pacers Group.

"[T]he Federal Rules of Civil Procedure give trial courts considerable discretion in determining whether expense-shifting in discovery production is appropriate in a given case." *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996). The United States is not exempt from paying costs of a non-party's compliance with a subpoena. *United States v. Blue Cross Blue Shield of Mich.*, 2012 WL 4513600, at *7 (E.D. Mich. Oct. 1, 2012). The circumstances here warrant an order requiring the Parties to reimburse the Pacers Group for its fees and expenses associated with collecting, reviewing, and producing information. *Spears*, 74 F.3d at 158 (affirming trial court's award of costs because of the "timing of the subpoenas, the wealth of materials sought … and the privileged nature of many of the documents").

\* \* \*

## Conclusion

The Pacers Group respectfully requests that this Court enter an order:

(1) Protecting it from having to produce information in response to the Parties' subpoenas unless the Colorado court first enters an order as described above;

(2) Limiting the scope of the information that the Pacers Group must provide in response to the subpoenas to the information listed above;

(3) Providing that the Pacers Group may withhold information that is protected by the accountant-client privilege; and

(4) Requiring the Parties to reimburse the Pacers Group's fees and expenses incurred in responding to the subpoenas.

Date: June 15, 2016                                          Respectfully submitted,

/s/ Daniel R. Kelley
David K. Herzog
Daniel R. Kelley
FAEGRE BAKER DANIELS LLP
300 N. Meridian St., Suite 2700
Indianapolis, IN 46204-1750
David.Herzog@FaegreBD.com
Daniel.Kelley@FaegreBD.com

*Counsel for Non-Parties*
*Herbert Simon, Stephen Simon, Kevin*
*Bower, Donald Walsh, and*
*Pacers Basketball, LLC*

**Certificate of Service**

I certify that on June 15, 2016, a copy of the foregoing *Motion for Protective Order* was filed electronically. A copy of the foregoing was also sent by email to:

| | |
|---|---|
| James E. Weaver | John Porter |
| Senior Litigation Counsel | BAKER BOTTS L.L.P. |
| UNITED STATES DEPARTMENT OF JUSTICE | 910 Louisiana Street |
| Tax Division | Houston, Texas 77002 |
| 555 4th Street, N.W. | |
| Washington, D.C. 20001 | |
| | |
| Lindsay L. Clayton | |
| Trial Attorney | |
| UNITED STATES DEPARTMENT OF JUSTICE | |
| Tax Division | |
| P.O. Box 683 | |
| Washington, D.C. 20044 | |

/s/ Daniel R. Kelley