### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| In Re Motion for Protective Order | ) ) ) | Case No. 1:16-mc-00042-WTL-TAB |

### BRIEF OF THE UNITED STATES
### IN RESPONSE TO MOTION FOR PROTECTIVE ORDER
### AND CROSS-MOTION FOR TRANSFER OF VENUE

The United States of America, through its counsel, responds to the Motion for Protective Order ("Motion") filed on behalf of Herbert Simon, Stephen Simon, Pacers Basketball, LLC, Kevin Bower and Donald Walsh (collectively, the "Pacers Group"). The motion is without merit and should either be transferred to the United States District Court for the District of Colorado or, alternatively, denied outright.

## I.    INTRODUCTION

The discovery disputes described in the Motion concern subpoenas issued by the United States and by Bren Simon to the Pacers Group in *Bren Simon v. United States*, No. 1:15-cv-00538-REB-KMT (D. Colo.) (the "Colorado Case"). The Motion seeks to thwart discovery sought from the Pacers Group, unless and until the Court in the Colorado Case enters a protective order that would impose conditions on the discovery obligations of other subpoenaed parties in the Colorado Case and interfere with the law enforcement obligations of counsel for the United States. The Motion also requests that this Court limit the scope of the documents to be produced by the Pacers Group, impose a state law accountant-client privilege on a federal tax proceeding, and require Bren Simon and the United States to pay unsubstantiated and unreasonable self-inflicted legal costs purportedly incurred by the Pacers Group.

14104974.1

As a preliminary matter, the most appropriate venue for resolving the disputes raised in the Motion is the Court presiding over the Colorado Case. Accordingly, the United States cross-moves for a transfer of venue to the United States District Court for the District of Colorado with respect to Motion and any discovery disputes addressed or raised in the Motion.[1] In the alternative, and at a minimum, the Motion should be denied outright.

To the extent the Court evaluates the substance of the Motion, it is important to note that the Pacers Group has not produced a single document in response to subpoenas issued by Bren Simon in September 2015 and subpoenas issued by the United States in December 2015. This continues to be the case even though the United States narrowed its subpoenas for documents in April 2016 to facilitate compliance. Not every single requested document can be "confidential," nor can the Pacers Group actually be concerned that every requested document might prompt Department of Justice attorneys to refer criminal activities to proper authorities – an apparent sticking point in reaching an agreement for protective order. Nor can every responsive document be subject to a state law "accountant-client" privilege. Yet no documents have been produced over many months of delay.

Rather than provide documents responsive to the requests set forth in the subpoenas, the Pacers Group has instead raised a multitude of objections and re-written particular requests to their liking. A fair reading of the responses themselves, as well as the ensuing correspondence between counsel, reveals that it is the Pacers Group, and their counsel, who bear the blame for any costs they may have incurred along their meandering path to the courthouse door. As a result, to the extent this Court is inclined to rule on the substance of the Motion, the Motion should be denied.

---

[1] The United States is filing a separate motion that references this brief.

## II.      BACKGROUND FACTS

### A.      *The Colorado Case*

Prior to February 2, 2009, Melvin Simon, through a holding company, co-owned and controlled the Pacers Basketball Indiana Pacers ("PBC") with his brother, Herbert Simon. (*See* Ex. A to Declaration of James E. Weaver).[2] After February 2, 2009, Melvin Simon neither owned common equity in, nor controlled, the Pacers. Instead, Melvin Simon, through a holding company, became the owner of one-half of the preferred units issued by the successor to PBC: namely, Pacers Basketball, LLC ("PBLLC"), and he received an additional interest in PBLLC that might provide him with certain profits in the event of a capital transaction. (*See* Weaver Decl. Exs. B & C).

The IRS concluded that events culminating in the February 2, 2009 reorganization of the Pacers constituted a taxable gift from Melvin to Herbert Simon. On December 10, 2013, the IRS issued a notice of deficiency to Bren Simon, the surviving spouse of Melvin Simon, asserting a gift tax liability against Ms. Simon of $18,675,000. (*See* Weaver Decl. Ex. D). (By virtue of a spousal election, one-half of Melvin Simon's gifts in 2009 were attributed to Ms. Simon.) Ms. Simon paid the tax, plus interest, and brought the tax refund action now pending in the United States District Court in Colorado.

The United States contends that the February 2009 transfer of wealth was not made in the ordinary course of business, was not arms-length, and was not made for adequate consideration. Rather, the transfer constituted a gift. (*See* 26 U.S.C. §§ 2501 and 2511-2512; *see also* Weaver Decl. Ex. E at p. 4). Alternatively, the elimination of Melvin Simon's voting rights with respect

---

[2] Certain exhibits attached to the Weaver Declaration, although not subject to a protective order, have been partially redacted, leaving visible only information needed to support the relevant contentions made in this response. In most instances, this is done as an accommodation to the Pacers Group and not out of any legal obligation, pending resolution of the Motion.

to the Pacers constituted a gift pursuant to statute. (*See* 26 U.S.C. § 2704(a)(1); *see also* Ex. E at p. 4). Ms. Simon, on the other hand, contends that the Pacers reorganization "was made in the ordinary course of business, bona fide and free of donative intent . . .;" that "Mel received adequate and full consideration . . .;" and disagrees that there was any lapse of voting rights under Section 2704, (*See* Ex. E at p. 3).

The discovery sought by the United States from the Pacers Group seeks information relevant to the parties' claims and defenses and is proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b). Contrary to assertions in the Motion, valuing closely held businesses or financial interests, especially a substantial one such as the Pacers, entails obtaining extensive factual information and not merely "high-level financial information or corporate governance documents." *See* Motion at p. 10; *see also* Rev. Ruling 59-60, 1959 WL 12594 (detailing, in general, approaches to value); 26 C.F.R. § 25.2512-2(f). Thus, in light of the issues in the Colorado Case, the United States is justified in seeking historical financial and operational information regarding the Pacers, projections reflecting the expectations of the team and its owners and executives in 2009, information regarding estate planning, information regarding purported negotiations involving Herbert Simon and his family and/or advisors with Melvin Simon and his family and/or advisors, and communications between the Pacers and the NBA concerning the February 2009 transfers or other valuation-related matters. The information is not only needed to value Melvin Simon's one-half equity interest in the Pacers prior to the February 2009 transfer but also to evaluate Mr. Simon's post-February 2009 preferred stock and future profits interests.[3]

---

[3] Melvin Simon passed away on September 16, 2009.

  **B.**  ***Subpoenas Directed to the Pacers Group***

  On December 23, 2015, the United States served subpoenas for documents on Herbert Simon, Stephen Simon, and PBLLC. (*See* Weaver Decl. Exs. G, H & I). Counsel for the Pacers Group responded on February 1, 2016 with a multitude of improper general and specific objections. For example, counsel unreasonably objected to producing documents "from years before, or after February 2, 2009," (*See e.g.*, Dkt. No. 5 p. 2 of 42). Counsel objected to requests to the extent they were "duplicative of requests" from Ms. Simon, overlooking instructions in the United States' subpoenas that excluded from the scope of production documents already produced to Ms. Simon in response to her subpoena. (*See e.g.*, Dkt. No. 5 p. 5 of 42). In a number of instances, counsel for the Pacers Group simply rewrote requests or indicated that responsive documents would be captured in the production to Ms. Simon. (*See e.g.*, Dkt. No. 5 pp. 5-15 of 42); however, the Pacers Group similarly rewrote responses to Ms. Simon's subpoenas to suit themselves. (*See e.g.* Dkt. No. 3 at p. 4 of 9 (responses to Requests 4-6). And although counsel for the Pacers Group offered to provide the United States with copies of documents produced to Ms. Simon, counsel improperly placed the burden on the United States to identify any other documents it might want "specifically." (Dkt. No. 5 p. 3 of 42).

  These responses were unacceptable, and the undersigned indicated as much in letters to counsel for the Pacers Group dated March 11, 2016 and March 29, 2016. (Weaver Decl. Exs. I & J; *see also* a follow up letter of April 5, 2016, Ex. M).  For example, the undersigned explained that with respect to certain items sought from PBLLC, "[o]ur valuation experts have requested this information because it is relevant to their analyses." (Ex. I pp. 3-4 of 6).  The letters attached copies of the NBA protective order for purposes of crafting protective orders with respect to productions of documents by PBLLC, Herbert Simon and Stephen Simon.  (Exs. I & J).

On April 12, 2016, counsel for the Pacers Group responded, including proposed changes to the model NBA protective order previously forwarded by the undersigned to counsel. (Weaver Decl. Ex. N).

The United States also issued a number of subpoenas for documents to other potential witnesses or custodians in December 2015, including the NBA, Ellin & Tucker (a firm the prepared a date-of-death valuation of Melvin Simon's interests in the Pacers for Melvin Simon's Estate), and an accounting firm for the Simons and the Pacers: Katz Sapper & Miller, LLC ("KSM"). (Weaver Decl. ¶ 12).  With respect to the NBA and KSM subpoenas, the United States, Bren Simon and the subpoenaed parties entered into stipulated protective orders that were granted by the Court in the Colorado Case. (Weaver Decl. ¶¶ 14-15 & Exs. K & L). Through subpoenas to various persons and entities, the United States received some of the information requested from Herbert Simon, Stephen Simon, and PBLLC.  (Weaver Decl. ¶ 13).

In the hopes of ending delays in obtaining documents and moving forward cooperatively with the Pacers Group, the undersigned wrote to counsel for the Pacers Group on April 29, 2016, indicating that the United States would eliminate some of its earlier requests and would narrow others through streamlined replacement subpoenas for documents. (Weaver Decl. Ex. O). To head off a further flood of meritless objections, the undersigned explained the need for the requested information. (*Id*.) Enclosed with the letter were narrowed subpoenas for documents to PBLLC, Herbert Simon and Stephen Simon. (Weaver Decl. Exs. P, Q & R). In addition, the undersigned proposed revisions to the draft protective order received by the undersigned on April 12, 2016, including a footnote tailored to address potential disagreements over what might constitute confidential information. (Weaver Decl. Ex. S).

In addition, the United States issued subpoenas for depositions of Herbert Simon, Kevin Bower, and Donald Walsh, all witnesses identified by Ms. Simon in her Initial Disclosures as persons upon whom Ms. Simon might rely. (Weaver Decl. Exs. T, U & V). An exchange of emails and letters ensued. (Weaver Declaration Exs. W, X, Y, Z & AA).[4]

Counsel for the Pacers Group and the United States conferred by telephone in late May 2016 and early June 2016. (Weaver Decl. ¶ 32).  On June 8, 2016, the United States sent a list of proposed custodians and search terms to counsel for the Pacers Group, in hopes of moving forward.  (Weaver Decl. ¶ 31).

Unfortunately, during a telephone call on June 9, 2016, the two sides concluded that they had reached an impasse, not only as to terms of a stipulated protective order, but also with respect to an assertion of a state law accountant-client privilege by the Pacers Group. (Weaver Decl. ¶ 32). In addition, the Pacers Group now asks that the parties to the Colorado Case be required to subsidize legal expenses the Pacers Group has incurred to maintain an unnecessarily protracted discovery dispute.

## III.   LEGAL ANALYSIS

### A.   *The disputes raised by the Pacers Group should be transferred to the United States District Court for the District of Colorado*

The relief requested by the Pacers Group is unprecedented and inappropriate. The Pacers Group seeks to condition compliance with subpoenas on factors unrelated to the subpoenas themselves. Specifically, compliance would be conditioned on entry of an order by another federal district court concerning documents produced by persons other than the Pacers Group.

---

[4] Counsel for the Pacers and Mr. Simon indicates that the "universes of documents" for Herbert Simon and Stephen Simon are identical and is treating the subpoena to Stephen Simon "as withdrawn."  The United States observes that some documents already obtained from other parties in the Colorado Case may indicate that Stephen Simon utilized an e-mail address or server outside of the e-mail address for the Pacers.

This makes no sense and is not supported by case law. If some other person has produced, or will produce, documents in the Colorado Case that the Pacers Group believes should be protected, then the Pacers Group should move to intervene in that case. A conditional order from this Court permitting the Pacers Group to refuse to produce documents here would serve no purpose other than to interfere from afar with management of the discovery process by the Court in the Colorado Case. Such interference will improperly delay or deny an opportunity by the parties to gather evidence from the Pacers Group for use at trial.

Under Fed. R. Civ. P 45(f), an enforcing court may first transfer a motion to quash a subpoena to the issuing court if the subpoenaed party consents. If the subpoenaed party does not consent (as is the case here), then the Court may transfer if it finds there are "exceptional circumstances." The Advisory Committee notes explain that, in determining whether exceptional circumstances are at play, a court's:

> . . . .prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. **In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.**

Fed. R. Civ. P. 45 advisory committee's note (2013 Amendment) (emphasis added); *see also Elliot v. Mission Trust Servs.*, LLC, 2015 WL 1567901, at *2 (N.D. Ill. Apr. 7, 2015).

The Court in the Colorado Case has already entered two stipulated protective orders that are at odds with the protection sought here by the Pacers Group as to both criminal referral provisions and as to the scope of what those orders cover. In addition, no protective orders have

been entered in the Colorado Case authorizing assertion of the accountant-client privilege. To the contrary, KSM – the accounting firm in question – has produced a large volume of documents in response to subpoenas issued in the Colorado Case and eight current or former accountants with KSM have been deposed. Moreover, significant productions of documents have already been made by a number of persons in connection with the Colorado Case that may include documents that the Pacers Group considers to be "confidential." Such persons or entities include Ellin & Tucker, the Estate of Melvin Simon, the NBA, KSM, and Bren Simon.

It makes little sense for this Court to now become enmeshed in the contours of confidentiality disputes that reach beyond the subpoenas at issue. It makes little sense to permit the Pacers Group to assert Indiana's accountant-client privilege in a federal proceeding where it does not apply, especially in light of the substantial water that has already flowed under the proverbial bridge in the Colorado Case, merely because Bren Simon and Herbert Simon are engaged in litigation over the applicability of the privilege in other litigation.

Finally, the Pacers Group consists of highly-successful individuals, including a professional basketball team owner, and the team itself. The benefits in transferring this dispute to the United States District Court in Colorado far outweigh any inconvenience to the Pacers Group. Indeed, the Court managing the Colorado Case is the only Court that can actually address concerns articulated by the Pacers Group that go beyond the subpoenas at issue here. As a result, the factors for transfer are met, and this Court should order this dispute and Motion transferred to the Federal District Court for the District of Colorado.

In the alternative, to the extent the Court addresses the substance of the Motion, it should be denied for the reasons set forth in the sections that follow.

//

**B.      This Court should not require the Colorado Court to enter a protective order.**

The first request made in the Motion is that this Court effectively dictate to the Colorado

Court that it enter a protective order meeting the Pacers Group's precise specifications;

otherwise, compliance by the Pacers Group with pending subpoenas would be excused. This

extraordinary request should be denied. As noted above, the United States made a good faith

attempt to come to an agreement with the Pacers Group regarding the form of a protective order

governing their production of documents. The United States suggested a form similar to the two

protective orders already entered in the Colorado Case regarding documents produced by the

NBA and KSM. Negotiations with the Pacers Group reached an impasse on June 9, 2016

primarily over two issues: (1) the Pacers Group insists on including language in the protective

order allowing it to designate documents produced by other parties as confidential; and (2) the

Pacers Group, in contrast to the NBA and KSM, insists that the United States be barred from

referring any potential violations of law that come to light from its documents to the appropriate

law enforcement authorities, absent notification to the Pacers Group. The Pacers Group's

requests should be rejected for the reasons set forth below.

      *1.      The Pacers Group has not made a particularized showing of need for*
         *confidentiality.*

First, the relief sought by the Pacers Group is "overbroad and otherwise improper." *See*

*Brown v. Automotive Components Holdings, LLC*, 2008 WL 2477588, *1 (S.D. Ind. June 17,

2008). As such, the Motion seeks an order that is contrary to Seventh Circuit precedent, which

requires a particularized showing of the need for confidentiality. *E.g., Union Oil Co. of*

*California v. Leavell,* 220 F.3d 562, 567 (7th Cir. 2000) (explaining that though "[m]any a

litigant would prefer that the subject of the case. . . .be kept from the curious (including its

business rivals and customers). . . .the tradition that litigation is open to the public is of very long

10

standing."); *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-946 (7th Cir. 1999) (finding that blanket protective orders without a suitable finding of good cause are invalid and inappropriate); *see also, Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002) (finding that "because we say so" and broad brush claims of business interests are insufficient to maintain the confidentiality of documents in federal litigation).

Although the Motion addresses particular provisions desired by the Pacers Group in any protective order, it does not articulate the elements of an affirmative case for entry of such an order, much less carry its burden of proof to make such a showing. On this basis alone, the request for a protective order must be denied.

2.    *The Pacers Group should not be able to designate documents produced by third parties as "confidential."*

It is axiomatic that a protective order should only be issued for "good cause." Fed. R. Civ. P. 26(c); *Citizens,* 178 F.3d at 944-945 (finding that it was improper for a district court to grant "a virtual carte blanche to either party" to seal court records, as records should only have been sealed for "good cause."); *Pierson v. Indianapolis Power & Light Co.*, 205 F.R.D. 646, 647 (S.D. Ind. 2002) (stating that "[f]ederal courts must independently determine whether 'good cause' exists for proposed protective orders; they cannot grant parties carte blanche to seal whatever they desire." (citation omitted)). The Pacers Group has failed to establish that good cause exists for the extraordinary confidentiality they seek here.

The Pacers Group argues that the United States has received "information from multiple sources" including Mrs. Simon, KSM, and others, that it considers confidential but that the producing parties apparently did not. The Pacers Group argues that it should now be able to peruse the records produced to the United States by third parties and designate whatever documents it wishes as "confidential." The only rationale offered is that the NBA requires the

Pacers Group to "keep confidential information confidential." Mot. at 9. But this rationale is at odds with a protective order to which the NBA has already agreed.

The Pacers Group has offered no further factual rationale for why it should have a veto power over other parties' designations of their own material as confidential or non-confidential, and has provided no rationale at all for using its own document production obligations here as leverage in the Colorado Case. The Pacers Group claims that a similar provision was once included in a protective order issued in a proceeding before the United States District Court for the District of Nebraska. *See, e.g. Woodmen of World Life Inc. Society v. U.S. Bank Nat. Ass'n*, 2011 WL 1584027, *6 (D. Neb. 2011). However, a review of the history behind the *Woodmen* case cited by the Pacers Group reveals that the protective order in that case addressed a very different situation involving the class certification of a large group of shareholders (who presumably had no idea the litigation was underway) and what appears to be a blanket protective order. *See, Woodmen of World Life Inc. Society v. U.S. Bank Nat. Ass'n*, 2010 WL 3984799, *6 (D. Neb. Oct. 8, 2010). In addition, it is unclear whether a subpoenaed non-party (as opposed to a party to the action) could actually designate documents produced by others as confidential. *See* 2011 WL 1584027, *6.

It is also worth noting that the Court in *Woodman* found the responding party's refusal to respond to a subpoena in the absence of a confidentiality agreement to be inappropriate, and ordered the party to "proceed with production of documents at once." 2010 WL 3984799, *6. Therefore, far from supporting the Pacers Group's overall argument, the *Woodman* decision in fact supports the principle that a party cannot use a dispute over a protective order as a shield to avoid producing documents responsive to a subpoena.

The Pacers Group also cites *Kilopass Technology, Inc. v. Sidense Corp.*, 2011 WL 2470493, \*4 (N.D. Cal. June 21, 2011) and *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 3958232, at \*1 (N.D. Cal. July 29, 2013) in support of its request. But neither of these cases actually included the expansive protective order provision the Pacers Group is requesting here. In *Kilopass*, the Court declined to issue such an order because the parties agreed to cooperate to ensure the protection of sensitive information. 2011 WL 2470493 at \*4. In *Apple*, the Court allowed a third party to intervene in order to seal select, highly confidential parts of a single document: that third party's patent licensing agreement. *See generally*, 2013 WL 3958232. No party to the litigation objected to the third party's intervention or proposed redactions. *Id.* at \*1. Therefore, neither case supports the Pacers Group's broad request here, especially given that the request is made to a court other than the court overseeing discovery.

Furthermore, both *Kilopass* and *Apple* involved highly sensitive trade secrets, which established good cause for protecting the information. The Pacers Group has not, and cannot, cite to any similar concerns. The Pacers Group has made its motion in a vacuum and has not carried its burden for entry of an order. Indeed, the Pacers Group fails to even argue that good cause exists for the broad control it seeks over the parties' discovery. This failure is fatal to the request; the Court should refuse the Pacers Group *carte blanche* to designate any record in the Colorado Case as confidential.

> 3.    *The United States should not be prohibited from referring violations of the law to appropriate law enforcement agencies.*

The United States will not stipulate to a protective order that requires permission of a court or notice to third parties in order for attorneys and employees of the United States to refer violations of law to law enforcement authorities for several reasons.

First, such a prohibition may prevent employees of the Department of Justice or IRS from complying with statutory law. The Internal Revenue Code requires that any officer or employee of the United States involved in tax administration who learns of a violation of revenue laws make a written report of such a violation or face dismissal, fines or imprisonment. *See,* 26 U.S.C. § 7214(a)(8). The law does not condition this obligation on court approval. Nor would it make sense to tip off potential criminal actors or conspirators who may be implicated in a document prior to turning it over to investigators.

Second, the reporting of violations of law is an ethical obligation of all federal government employees to report fraud, waste and abuse. *See* 5 C.F.R. § 2635.101(b)(11).

Third, a restraint on referring violations of law is contrary to policies and practices of the Department of Justice. *See,* 71 FR 11446-02 (2006 WL 535646, Mar. 7, 2006) ("[w]here a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law - criminal, civil, or regulatory in nature - the relevant records may be referred to the appropriate Federal, state, local, foreign, or tribal law enforcement authority or other appropriate agency charged with the responsibility of investigating or prosecuting such a violation or enforcing or implementing such law.").

Fourth, such a bar would essentially enjoin the Executive Branch, over its objection, from sharing information internally when a party has sued the United States. This has the potential to create difficult questions involving the separation of powers and justiciability. It also raises an issue about whether restraining the Executive Branch in a tax administration matter would violate the Anti-Injunction Act. *See,* 26 U.S.C. § 7421(a).

Although the Pacers Group cites to a few cases where courts have imposed limitations on law enforcement referrals,[5] the Motion ignores cases where such limitations have not been imposed. Most notable, of course, are the two stipulated orders entered in the Colorado Case with respect to documents produced by the NBA and by KSM. Instead, the Pacers Group relies heavily on a report and recommendation issued by a Special Master in the United States District Court for the Western District of Pennsylvania in the context of a "massive" false claims case involving numerous parties. *See United States v. Education Mgmt., LLC*, 2013 WL 1568060 (W.D. Pa. Mar. 14, 2013); *see also United States v. Education Mgmt., LLC*, 2011 WL 5085015 *1 (W.D. Pa. Oct. 24. 2011). The Pacers Group's reliance is undercut by an opinion issued by the same federal district court in the more apposite context of a tax case, in which that Court specifically rejected efforts to require the United States to apprise the disclosing party or seek court review of any referral to law enforcement authorities. *See Bayer-Onyx v. United States*, 2010 WL 2925019 at *2-3 (W.D. Pa. Jul. 20, 2010). Moreover, as reflected in briefing by the United States in *Education Mgmt.*, protective orders are routinely entered without limitations on the ability of a government attorney to refer violations to proper authorities. *See* Ex. 10 to U.S. Objections to Special Master Report in *Education Mgmt.*, Dkt. No. 252-12 in Case No. 2:07-cv-00461-TFM (W.D. Pa. Mar. 21, 2013) (attaching protective orders in false claims cases).[6] There is no reason to afford the Pacers Group with advance insight into any such confidential intra-governmental communications, should they arise. *See SEC v. AA Capital Partners*, 2009 WL 3735880, at *3 (E.D. Mich. Nov. 3, 2009).

---

[5] For example, in *United States v. Univ. Hosp. Inc.*, 2006 WL 2612631, at *3-4 (S.D. Ohio July 28, 2006), the Court did limit referral in the context of concerns about disclosure under the Health Insurance Portability and Accountability Act ("HIPAA") and the Family Educational Rights Act, but not before excluding financial information of the public hospital from the scope of protection. *See* 2006 WL 2612631 at *2.

[6] The exhibit is voluminous.

Moreover, two of the cases cited by the Pacers Group concern modifications to existing protective orders, and such modifications entail different considerations and standards of proof. *SEC v. Merrill Scott Assoc., Ltd.*, 600 F.3d 1262 (10th Cir. 2010) (government had previously agreed to more restrictive limitations); *Mass. v. Mylan Labs., Inc.*, 246 F.R.D. 87, 95 (D. Mass. 2007) (motion to modify protective order); *but compare Callister Nebeker & McCullough v. United States*, 2016 WL 1089242 at *2 (D. Utah Mar. 18, 2016) (contrasting *Merrill Scott* to *SEC v. AA Capital* and to *United States v. Elsass*, 2011 WL 335957 (S.D. Ohio Jan. 31, 2011)). In *Elsass*, the Court noted that issuance of a protective order restricting the government's referral abilities "would be unprecedented, would restrict to an unwarranted degree the ability of the Government to enforce the laws and would improperly shift to the Government the burden in connection with the issuance of a protective order." 2011 WL 335957 at *5.

Here, the Pacers Group has not made a valid showing for a protective order in the first instance, much less any showing for imposing restrictions on referrals of violations of law to the proper authorities. Therefore, the Pacers Group's request for such an order should be rejected.

### C.   The scope of the subpoenas should not be limited to the narrow set of documents identified by the Pacers Group.

The scope of a Rule 45 subpoena is as broad as that which is otherwise permitted under the discovery rules. *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253–254 (S.D. Ind. 2002). Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding:

> . . . .any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

For the purpose of discovery, relevance will be construed broadly to encompass "'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (citations omitted).

Applying the factors set forth above reveals that discovery should not be curtailed as the Pacers Group suggests. The tax claim in the Colorado Case is for $21,372,328.43, a significant amount by any standard. The nature of the case merits that the parties undertake a careful and thorough investigation of the facts through discovery. Because the case involves issues concerning the application of estate and gift tax statutes, it is of significance and importance to the public. Moreover, much of the information needed in the case concerns the values of various interests held by Melvin Simon in the Indiana Pacers, the nature of the transfers involving the Pacers, and communications between Melvin and Herbert Simon (as well as among Simon family members and advisors) concerning the Pacers and estate planning, during the time period leading up to February 2009. In this regard, evidence sought from the Pacers Group is at the very core of the Colorado Case. As between United States and the Pacers Group, the latter has far greater access to relevant information and, given the substantial wealth associated with the Pacers Group, it also has ample resources to comply with subpoena requests.

Valuing a business interest, especially an interest in a major sports franchise, is a fact-intensive endeavor. *See e.g.*, Rev. Rule 59-60. There are no shortcuts to making a thorough review of facts and circumstances regarding the business; obtaining detailed financial reports, budgets, forecasts and projections, historical information, relevant agreements and contracts; evaluating corporate management capabilities and shortcomings; understanding expectations of those involved in the business endeavor; and obtaining communications reflecting negotiations

17

or discussions leading up to the February 2009 transfers. *See id*. There is also no shortcut for ascertaining facts relevant to Ms. Simon's in-the-ordinary-course-of-business, arms-length, and lack of donative intent defenses to the gift tax assessed.

Given this context, the Pacers Group seeks to unreasonably rewrite and restate subpoena requests to their liking. For example, none of the categories referred to on pages 11-12 of the Motion address communications regarding events leading up to the February 2009 transfer or communications regarding the agreements implementing those transfers. None of the listed items would permit the United States to gain an understanding of how key financial and operational employees of the Pacers viewed the prospects for the team during the time period at issue. The listed items do not reach communications with the NBA, the Capital Improvements Board, family members and, to a large degree, the Pacers Group's accountants at KSM.

The United States does not wish to burden the Pacers Group with requests that cannot be met without inordinate and unreasonable effort. But the Motion contains no specifics that would justify the arbitrary and unilateral limits on the scope of discovery proposed by the Pacers.

> **D.     The Indiana Accountant-Client Privilege does not bar production in this federal litigation.**

Pursuant to Fed. R. Civ. P. 501, federal common law privileges apply in federal question cases, such as the Colorado case. *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004). Under the federal common law there is no accountant-client privilege. *Couch v. United States*, 409 U.S. 322, 335 (1973); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103-104 (3d Cir. 1982). Indeed, the Pacers Group concedes as much. (Motion, p. 14). That should end the matter.

The Pacers Group, however, seeks to effectively assert the accountant-client privilege in the Colorado Case and this miscellaneous action, arguing that failure to honor the privilege

might potentially prejudice them in pending litigation involving Bren Simon and Herbert Simon. The Court should not countenance an attempt to limit the United States' ability to obtain discovery here on account of potential issues pending elsewhere. Were the Pacers Group to prevail, every party with state-law privilege claims would make similar arguments, thereby supplanting the federal common law regarding privileges with state law.

Moreover, at this juncture in the Colorado Case, any claim of privilege with respect to communications between accountants with KSM and the Pacers Group is strained beyond the breaking point. KSM has produced documents in the Colorado Case, first to Bren Simon, and later to the United States. Eight accountants with KSM have been deposed by the parties.

In short, there is no basis in law or fact for permitting the Pacers Group to withhold documents from production on grounds of Indiana's accountant-client privilege.

### E.      The Parties should not be sanctioned, nor should they be compelled to pay the Pacers Group's costs.

The United States should not be penalized or required to reimburse the Pacers Group for self-inflicted and unreasonable costs they have incurred in formulating unwarranted objections to the subpoenas.

#### 1.      The United States has taken reasonable steps to avoid imposing undue burden or expense on the Pacers Group.

There is no basis for the Court to sanction the United States under Rule 45(d)(1) of the Federal Rules of Civil Procedure for purportedly failing to take reasonable steps to avoid imposing such costs on the Pacers Group. Whether a subpoena imposes an undue burden turns on whether the burden of compliance exceeds the benefit of documents sought. *E.g., Brake Plus LLC v. Kinetech, LLC*, 2015 WL 630246 (S.D. Ind. Feb. 11, 2015) (citing *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)). In this case, the benefits of the documents far outweigh any incidental burdens on the Pacers Group. As explained above, the subpoenas are

targeted to reach relevant information at the heart of the Colorado Case. The Pacers Group has provided no specifics about why responding to the subpoenas as they now stand would prove inordinately difficult or costly. Given the nature of the case and the need for evidence to support the United States' claims and defenses, the subpoenas do not impose an undue burden, and the record before the Court does not justify sanctioning the United States.

The Pacers Group nonetheless argues that sanctions are appropriate because: (1) "the Parties served duplicative and overly broad subpoenas;" (2) the Parties "refused to agree to the entry of a reasonable protective order;" and (3) "[p]articularly, the IRS's service of two sets of complex and overlapping subpoenas imposed significant and unnecessary financial burdens on the Pacers Group." (Motion, p. 16). Far from demonstrating why sanctions are appropriate, these arguments actually prove the opposite. Indeed, the United States consistently took reasonable steps to reduce any burden on the Pacers Group by: (1) clearly stating on the face of the subpoenas and in correspondence that documents produced to Bren Simon in response to her subpoenas did not need to be produced a second time; (2) proposing the entry of a reasonable protective order; (3) issuing a second group of subpoenas in April 2016 narrowing some of the government's requests and eliminating others entirely; and (4) proposing search terms to satisfy the Pacers Group's production obligations. The Pacers Group had no need to apparently expend princely sums of money to seek unreasonable protective order terms and to compare one set of requests against the other.

In sum, the United States has taken reasonable steps to avoid imposing an undue burden or expense on the Pacers Group, and sanctions are not warranted under Fed. R. Civ. P. 45(d)(1).

//

//

2.      *The United States should not be required to pay the Pacers Group's compliance costs.*

A nonparty that has objected to a subpoena can also potentially be protected from "significant expense" incurred in complying with a subpoena under Fed. R. Civ. P. 45(d)(2)(B)(ii). "That is not to say, however, that any burden or expense is excessive," and courts have typically considered three equitable factors in making cost-shifting determinations under this provision. *Keaton v. Hannum*, 2013 WL 4481889, at *1 (S.D. Ind. Aug. 19, 2013). These factors are: "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance." *Id.* (citing *DeGeer v. Gillis*, 755 F.Supp.2d 909, 928 (N.D. Ill. 2010)); *See also, Arthrex, Inc. v. Parcus Medical LLC*, 2011 WL 6415540, *8 (S.D. Ind. Dec. 21, 2011) (articulating similar types of factors).

Here, these factors weigh against cost shifting. First, the Pacers Group has certain broad interests in the outcome of the Colorado Case, which implicates shifts in the ownership and capital structure of the Indiana Pacers. Herbert Simon is the recipient of the transfers giving rise to the tax. Indeed, the Pacers Group itself has argued that the issues in this case are so intertwined with litigation involving Herbert and Bren Simon that Indiana's state accountant-client privilege should apply in a federal proceeding because "failure to honor the privilege here may prejudice the Pacers Group in Indiana state-court litigation against one of the Colorado litigants." Second, PBLLC owns a flagship sports franchise, and the individuals in the Pacers Group are highly successful and well known individuals. Herbert Simon is a businessman of substantial means. Thus, the Pacers Group is perfectly capable of bearing the cost of compliance. Third, the Colorado Case is of public importance because it "deals with the collection of taxes."

*See, e.g., In re Wesco Distribution, Inc.*, 2013 WL 432932, at *3 (W.D. Pa. Feb. 4, 2013) (citation omitted).

In support of the Pacers Group's contentions, the Motion cites to two cases. Neither case, however, provides support for shifting costs here. In *Spears*, a district court did not abuse its discretion in imposing costs on a party that issued a subpoena late in the discovery process "with the whiff of a fishing expedition apparent." *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996). The subpoenas at issue were extremely broad relative to the issues in the case, requesting "all documents of any kind" in the responding party's files "regarding the taxicab business in Indianapolis" for a 21 year period. *Id.* In contrast, the United States and Ms. Simon both issued their subpoenas early in the discovery process and tailored their requests to matters highly relevant to the Colorado Case. The requests in no way constitute a "fishing expedition."

In *Blue Cross*, the court merely articulated the standard for cost shifting, but declined to impose costs on the United States without "detailed estimates of the reasonable costs that [the responding party] would incur to comply" with the subpoenas. *United States v. Blue Cross Blue Shield of Michigan*, 2012 WL 4513600, *7 (E.D. Mich. Oct. 1, 2012). This was so despite the court's acknowledgement that the responding party would incur significant expense in complying with the subpoenas. *Id.* The Pacers Group has not provided any accounting whatsoever for purported costs incurred, and the extent to which these subpoenas required the review of privileged information. Absent such an accounting, the Pacers Group is not entitled to reimbursement. And the $100,000 amount apparently incurred for attorney's fees is unreasonable on its face. Thus, rather than supporting the Pacers Group's request, *Blue Cross* indicates that the Pacers Group has failed to even make a requisite minimal showing to be entitled to cost shifting.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that this matter be

transferred to the United States District Court for the District of Colorado. In the alternative, the

United States respectfully requests that the Pacers Group's Motion be denied.

Respectfully submitted June 29, 2016,

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

/s/ James E. Weaver
JAMES E. WEAVER
LINDSAY L. CLAYTON
LANDON YOST
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-305-4929 (Weaver)
202-307-0054 (Fax)
James.E.Weaver@usdoj.gov

Local Counsel:
Josh J. Minkler
United States Attorney

Jill Z. Julian
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market, Suite 2100
Indianapolis, Indiana 46204
(317) 226-6333
(317) 226-5027 [Fax]

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2016, I electronically filed the foregoing

Brief of the United States along with an accompanying Declaration of James E. Weaver (with

exhibits attached) and Exhibit List, with the Clerk of Court using the CM/ECF system. Notice of

this filing will be sent to the following parties by operation of the Court's electronic filing

system. Parties may access this filing through the Court's system:

David K. Herzog
FAEGRE BAKER DANIELS LLP (Indianapolis)
david.herzog@faegrebd.com

Daniel R. Kelley
FAEGRE BAKER DANIELS LLP (Indianapolis)
daniel.kelley@faegrebd.com

I also have sent a copy of the above via e-mail to the following:

John W. Porter
Keri D. Brown
Jeffrey D. Watters
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995

*/s/James E. Weaver*
JAMES E. WEAVER
Trial Attorney, Tax Division
United States Department of Justice